UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEWOLFF, BOBERG & ASSOCIATES, INC., § § § | |
| Plaintiff, § § | Civil Action No.: 3:22-CV-2489-K |
| v. § § | |
| ED CLARK, § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ed Clark's Partial Motion to Dismiss (Doc. No. 7) and brief in support (Doc. No. 8) (together, the "Motion"). Plaintiff filed a Response in Opposition (the "Response") (Doc. No. 12) and Defendant filed a Reply in Support (the "Reply") (Doc. No. 15). The Court has carefully considered the Motion, the Response, the Reply, the relevant portions of the record, and the applicable law. Defendant fails to establish that Plaintiff cannot recover as a matter of law for breach of contract based on the non-compete covenant; therefore, the Court **DENIES** the Motion as to the breach of contract claim (Count 1). The Court **GRANTS** the Motion as to the breach of fiduciary duty claim (Count 2) because it is preempted under the Texas Uniform Trade Secrets Act, to the extent it is based on misappropriation of trade secrets, and Plaintiff fails to state this claim with facial plausibility on another basis.

1

I.    **Factual and Procedural Background**

Plaintiff DeWolff, Boberg & Associates, Inc. ("Plaintiff") is a global management consulting company that specifically focuses on senior management and executives. Doc. No. 1-6, Ex. D-1 (Pl.'s Pet.) at 3. In building its business, Plaintiff alleges it "has developed and fiercely guarded its proprietary and confidential process" which includes a three-part process used with each client "involving (1) Sales and Marketing; (2) Analysis; and (3) Operations." *Id.* at 3-4. If the client follows this "proprietary" three-part process, Plaintiff guarantees "a 20-30 percent improvement in performance within six months of engagement." *Id.* at 4.

Defendant Ed Clark began working for Plaintiff in January 2018 as a Management Consultant. *Id.* His employment agreement with Defendant includes a provision prohibiting Defendant from disclosing confidential information, competing with Plaintiff, and soliciting Plaintiff's clients. *Id.* Due to his position, Defendant "was provided access to [Plaintiff's] proprietary systems and processes, diagnostic materials, templates, intellectual property, software, and other non-public, confidential, and commercially-sensitive materials and data concerning [Plaintiff's] analysis and operational approaches" which Plaintiff defines as its "Trade Secrets." *Id.* at 6. In May 2022, Defendant suddenly resigned his position. *Id.* at 7. Days before Defendant left his job, Plaintiff alleges he "accessed, downloaded, and forwarded to himself Trade Secrets from [Plaintiff's] database." *Id.* Plaintiff later learned that Defendant was hired

2

by one of its direct competitors, the Randall Powers Company ("Powers"), and that Defendant "is performing the same job functions" for Powers. *Id.*

Plaintiff filed this suit in state court against Defendant, asserting claims for (1) breach of contract, (2) breach of fiduciary duty, and (3) misappropriation of trade secrets, and seeking monetary damages, injunctive relief, and attorneys' fees. Defendant removed the case to federal court on the basis of diversity jurisdiction and filed this Motion.

## II.    Standards of Review

Upon considering a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must presume all well-pleaded facts in plaintiff's complaint to be true, and resolve any ambiguities or doubts regarding the sufficiency of its claims in its favor. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the court must take as true all of the factual allegations in the complaint, but it is not "bound to accept as true a legal conclusion couched as a factual allegation."). In reviewing a Rule 12(b)(6) motion, the court may consider only "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594

F.3d 383, 387 (5th Cir. 2010). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Kane Enters.*, 322 F.3d at 374 (plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim). If a plaintiff pleads facts which allow the court to reasonably infer that the defendant is liable for the alleged misconduct, the claim has facial plausibility. *Twombly*, 550 U.S. at 570. Although not the same as a "probability requirement," facial plausibility calls for "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556 ("Factual allegations must be enough to raise a right to relief above the speculative level."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III.   Partial Motion to Dismiss

Defendant moves to dismiss two of Plaintiff's three claims for failure to state a claim: (1) breach of contract (Count 1) and (2) breach of fiduciary duty (Count 2). Defendant does not move to dismiss Plaintiff's claim for misappropriation of trade secrets (Count 3).

####    A.   Breach of Contract Claim

Plaintiff's breach of contract claim is based on Defendant's alleged breach of two separate contractual provisions within Defendant's Employment Agreement (the

"Agreement"): (1) non-disclosure of confidential information and (2) non-compete for one year after leaving Plaintiff's employment. Doc. No. 1-6 at 8. Defendant does not move to dismiss the breach of contract claim based on his alleged violation of the non-disclosure provision. Instead, Defendant's argument centers solely on the breach of contract claim arising from the non-compete covenant. *See* Doc. No. 12 at 1. Thus, the Court addresses this contractual provision only. Defendant contends that the non-compete covenant is unenforceable as being overly broad and ambiguous making it impossible for a former employee to comply. Plaintiff responds that the non-compete covenant is reasonable and "narrowly tailored to specifically protect [Plaintiff's] business interests." Doc. No. 12 at 5. Plaintiff asserts that, even if the non-compete covenant is unreasonable, the Court is required under Texas law to reform the covenant rather than dismiss it under Rule 12(b)(6). In his reply, Defendant reasserts his argument that the non-compete covenant is unenforceable and that, even if the Court were to reform the covenant, dismissal is still required. Doc. No. 15 at 2-8.

The Court must first determine which state's law applies to this claim. In his Motion, Defendant states that the Agreement is governed by Delaware law and very generally addresses in one paragraph the treatment of these types of covenants under Delaware law. Doc. No. 8 at 10-11. Defendant then asserts that the Court may "agree that Texas law applies", *id.* at 11 (citing *DeWolff, Boberg & Assoc's v. Pethick*, Civ. Action No. 3:20-CV-3649-L, 2022 WL 4589161, at *8-9 (N.D. Tex. Sept. 29, 2022)(Lindsay, J.) (applying Texas law to the same contract)) and concedes that Texas has the more

5

substantial connection to this matter. *Id.* Plaintiff goes on to cite exclusively to Texas law but concludes that the non-compete covenant is unenforceable under either Delaware law or Texas law. *Id.* at 12-15. Plaintiff, without any explanation or choice-of-law argument, "takes the position in its Response that Texas law applies." Doc. No. 12 at 3 n.1. In his Reply, Defendant again fails to submit a specific argument regarding the choice-of-law provision and which state law applies, just stating that under either state's law this claim fails. Doc. No. 15 at 2, 6-8.

The Agreement here indeed contains a choice-of-law provision which provides: "This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware." Doc. No. 1-6 at 20. Based on the briefing, however, it appeared to the Court that the parties believe Texas law applies here; both parties dedicate the bulk, if not all, of their respective arguments to this issue based on Texas law. As previously noted, neither party presents a proper choice of law argument to the Court. To provide some clarity on this issue, the Court ordered the parties to file either a joint stipulation that no conflict between Delaware law and Texas law exists on this issue or, if no agreement could be reached, briefing which includes a proper choice of law argument. *See* Doc. No. 35. The parties timely filed a joint Stipulation Regarding Choice of Law in which they "stipulate that no conflict exists between Delaware and Texas law on the issue of enforceability of the underlying restrictive covenants and that Texas law applies to the contract claim, as applied by each of the Parties in their filings to date." Doc. No. 36 at 1. In light of the parties' agreement

6

and stipulation that Texas law applies to the contract claims here, the Court applies Texas law in determining the sufficiency of Plaintiff's pleadings to state a claim for breach of contract. *See also Pethick*, 2022 WL 4589161, at *9 ("As the parties both agree that Texas law applies, the Court's analysis will also apply Texas law."); *cf. R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis."); *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826, 846 (N.D. Tex. 2011)(Fitzwater, CJ) (citing *R.R. Mgmt.*, 428 F.3d at 222).

The Court now turns to the sufficiency of the breach of contract claim based on the non-compete covenant. "Reasonable covenants not to compete serve the legitimate business interest of preventing departing employees from 'using the business contacts and rapport established' during their employment to take the employer's clients with them when they leave." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 211 (5th Cir. 2018) (quoting *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991)). To be enforceable under Texas law, a non-compete covenant must include "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the good will or other business interest" of the employer. TEX. BUS. & COM. CODE § 15.50(a). (The parties do not dispute the enforceability of the Agreement containing the non-compete covenant. *See id.*) Thus, courts have found non-compete covenants which do not

7

include a geographical restriction or which "'extend to clients with whom the employee had no dealings during her employment' or amount to industry-wide exclusions are 'overbroad and unreasonable.'" *D'Onofrio*, 888 F.3d at 211 (quoting *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.2d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) and citing *Peat Marwick*, 818 S.W.2d at 387)). The inquiry does not end there, however, for "[s]ection 15.51 of the Texas Business and Commerce Code requires courts to reform covenants found to be unreasonable as to time, geographical area, or scope of activity." *D'Onofrio*, 888 F.3d at 212 (citing § 15.51(c)).

The non-compete covenant at issue here precludes Defendant, for a specified period of time, from "serv[ing] in any capacity, job or function . . . for any organization or entity that provides productive utilization services to any [DeWolff, Boberg & Associates] Clients." Doc. No. 1-6 at 5. This covenant contains the required temporal restriction, but does not include a geographical restriction, and is not limited to Plaintiff's clients with whom Defendant had dealings. *See D'Onofrio*, 888 F.3d at 211. Accordingly, under well-established law, the Court concludes that the non-compete covenant is "over broad and unreasonable." *D'Onofrio*, 888 F.3d at 211; *see* TEX. BUS. & COM. CODE § 15.50(a); *see also Pethick*, 2022 WL 4589161, at *9 (reviewing the same non-compete covenant between DeWolff, Boberg & Associates and another former employee, the court found the covenant to be "overly broad and unenforceable as written[.]").

8

However, the Court also concludes that dismissal of the breach of contract claim as to the non-compete covenant is not appropriate at this stage and based on this briefing. *See also Pethick*, 2022 WL 4589161, at *9 (despite finding the covenant "overly broad and unenforceable", the court determined that dismissal was "premature"). Reformation was first raised in Plaintiff's Response wherein Plaintiff argues Texas law requires reformation, and reformation, rather than dismissal, is the proper remedy. Doc. No. 12 at 6. In his Reply, Defendant contends that reformation cannot save the non-compete covenant because the conduct giving rise to the claim has already occurred. Doc. No. 15 at 6-7. In a footnote, Defendant states that reformation is moot based on the expiration of the restriction. *Id.* at 7 n.5. The parties' briefing on this issue of reformation is lacking and Defendant did not demonstrate that Plaintiff cannot recover as a matter of law "even under a noncompete covenant that has been reformed." *Orthoflex, Inc. v. Thermotek, Inc.*, Civ. Action No. 3:11-CV-0870-D, 2011 WL 5879330, at *1 (N.D. Tex Nov. 23, 2011)(Fitzwater, CJ). Accordingly, at the motion to dismiss stage, the Court does not decide whether the non-compete covenant could or should be reformed and whether Plaintiff could recover against Defendant for breach of contract if the non-compete covenant were reformed.

Having taken the well-pleaded facts as true and viewing those in the light most favorable to Plaintiff, the Court **denies** the Motion as to Plaintiff's breach of contract claim (Count 1).

### B. Breach of Fiduciary Duty Claim

Plaintiff alleges a claim for breach of fiduciary duty based on Defendant "stealing" Plaintiff's "Trade Secrets", including its "confidential customer information", for his and his new employer's benefit. Doc. No. 1-6 at 9. Plaintiff also alleges Defendant breached his fiduciary duty to Plaintiff "by accepting employment" with Powers, a direct competitor. *Id.* Defendant moves to dismiss this claim as being preempted by the Texas Uniform Trade Secrets Act ("TUTSA") because it is based on Defendant allegedly taking, using, and disclosing Plaintiff's trade secrets. Doc. No. 8 at 16-17. Plaintiff responds that this claim is not preempted because it is not based on Defendant's misappropriation of Plaintiff's trade secrets; but, even if it was based in part on trade secret misappropriation, the claim would not be preempted to the extent it is based on other conduct, such as Defendant accepting employment with Powers, a direct competitor, and "working duplicitously" for Plaintiff and Powers. Doc. No. 12 at 8-10. In his Reply, Defendant concedes this claim is not preempted to the extent Plaintiff relies on "conduct unrelated to the misappropriation of information" as causing the injury. Doc. No. 15 at 8; *see id.* at 10. But Defendant contends it arises entirely from his alleged misappropriation of confidential business information or trade secret and, Plaintiff's argument that it is based on Defendant's "dual employment" with Plaintiff and Powers at the same time is not grounded in the allegations in the Petition. *Id.* at 8-10, 11.

To establish a breach of fiduciary duty claim, the plaintiff must show (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) causation, and (4) damages. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Relevant to this tort claim, TUTSA includes a preemption provision which states, "Except as provided in Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A. Subsection (b) provides: "This chapter does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." *Id.* "Trade secret" is defined under the statute as "all forms and types of information, including business . . . information, and any formula," "plan," "program device, program, code," "process," "or list of actual or potential customers" that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known to or readily ascertained by another person through proper means. *Id.* § 134A.002(6). "Misappropriation" includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret" or "knew or had reason to know" that the person acquired the trade secret by improper

11

means.  *Id.* § 134A.002(3).  The statute defines "improper means" as including "theft," and "breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret".  *Id.* § 134A.002(2).

Although the Fifth Circuit has not yet addressed this, district courts in this circuit have consistently held that TUTSA's preemption provision applies "to the extent a plaintiff's tort claim is premised on the same facts as its claim for misappropriation".  *Comput. Scis. Corp. v. Tata Consultancy Servs. Ltd.*, Civ. Action No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *7 (N.D. Tex. Feb. 7, 2020) (collecting cases), *adopted by*, 2020 WL 1428941 (March 24, 2020); *see BKL Holdings, Inc. v. Globe Life Inc.*, --- F. Supp. 3d ---, 2023 WL 2432012, at *3 (E.D. Tex. Mar. 9, 2023) ("Although Texas courts have provided little guidance on the scope of TUTSA's preemption provision, the majority of courts considering this issue—including this one—have held that TUTSA preempts all claims based on 'the alleged improper taking of trade secret and confidential business information.'").  Here, Plaintiff alleges a claim for breach of fiduciary duty and also a claim for misappropriation of trade secrets.

Having taken the well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, it is clear that Plaintiff's breach of fiduciary duty claim is based, in part if not entirely, on Defendant's misappropriation of trade secrets.  Plaintiff alleges its "Trade Secrets" includes the "proprietary systems and processes, diagnostic materials, templates, intellectual property, software, and other non-public,

12

confidential, and commercially-sensitive materials and data concerning [Plaintiff's] analysis and operational approaches." Doc. No. 1-6 at 6. Plaintiff further alleges,

> [It] has spent decades developing these Trade Secrets, which have resulted in [Plaintiff's] success and competitive advantage in the marketplace. Likewise, should these Trade Secrets fall into the hands of a competitor, it would devastate [Plaintiff's] hard-fought commercial and competitive advantage. Accordingly, [Plaintiff] goes to great lengths to fiercely guard its Trade Secrets, which are stored and maintained on [Plaintiff's] servers.

*Id.* Plaintiff's servers are allegedly password-protected and only "a small number" of employees whose jobs require this information have this password-protected access to these Trade Secrets. *Id.* Plaintiff alleges all employees are required to sign non-disclosure agreements related to this "highly sensitive information" and an employee's access is revoked once it is no longer needed. *Id.* Plaintiff alleges that shortly before Defendant resigned, he "accessed, downloaded, and forwarded to himself Trade Secrets from [Plaintiff's] database." *Id.* at 7. Defendant allegedly resigned suddenly and began working immediately for Powers. *Id.* The information Defendant allegedly "stole" included Plaintiff's "templates and information concerning [Plaintiff's] systems, processes, approach and even about [Plaintiff's] clients." *Id.* Plaintiff alleges Defendant "misappropriated these Trade Secrets without [Plaintiff's] knowledge or consent" and did so to benefit himself and Powers. *Id.* at 8. Specifically in support of its breach of fiduciary duty claim, Plaintiff alleges Defendant "received confidential information, including access to [Plaintiff's] confidential customer information[,]" and "breached his fiduciary duties to [Plaintiff] by accepting employment at Powers and,

before resigning, stealing [Plaintiff's] Trade Secrets for his own and Powers benefit." *Id.* at 9.

The Court finds that, as pled by Plaintiff, this claim is based on the information Defendant allegedly took, which was Plaintiff's confidential business information or information that falls within the statutory definition of "trade secret", such a customer lists. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6); *see also ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 684 (W.D. Tex. 2019) (finding that "TUTSA preempts claims based on the unauthorized use of confidential information that was not a trade secret"). This is the same information, which Plaintiff defines as its "Trade Secrets" or confidential information, that gives rise to Plaintiff's claim for statutory misappropriation of trade secrets. *See* Doc. No. 1-6 at 9-10; *see also Pro Mineral, LLC v. Marietta*, Civ. Action No. 3:21-CV-2773, 2023 WL 2410884, at *6 (N.D. Tex. March 8, 2023)(Brown, J.) (court finding the TUTSA preemption provision extended to a claim for breach of fiduciary duty which was based on the same conduct as the misappropriation of trade secret claim). Thus, taking the allegations as true and in the light most favorable to Plaintiff, the Court concludes that the breach of fiduciary duty claim is preempted to the extent it is based on Defendant's misappropriation of Plaintiff's confidential business information or trade secrets. *See BKL Holdings*, --- F. Supp. 3d ---, 2023 WL 2432012, at *3. Therefore, the Motion is **granted** on this basis.

Plaintiff also alleges that Defendant's acceptance of employment with Powers, a direct competitor to Plaintiff, supports the breach of fiduciary duty claim. Doc. No. 1-6 at 9. In its Response, Plaintiff cites *Trueblue, Inc. v. DeRuby* in support of its argument that TUTSA does not preempt this claim to the extent it is based on other conduct which Plaintiff contends is Defendant's "dual employment" with Plaintiff and Powers at the same time. Doc. No. 12 at 9 (citing Civ. Action No. 3:18-CV-0192-M, 2018 WL 1784523 (N.D. Tex. Apr. 13, 2018) (Lynn, CJ)). In *Trueblue*, the court found that, although the breach of fiduciary duty claim depended in part on the defendant's misappropriation of trade secrets, the plaintiff pleaded sufficient factual allegations to state its claim on another basis. *Trueblue*, 2018 WL 1784523, at *2. The plaintiff in *Trueblue* alleged the defendant worked for a competitor while still employed by the plaintiff, used company resources, and solicited the plaintiff's customers and staff, all at the plaintiff's expense. *Id.* Here, Plaintiff contends that its Petition includes allegations "[Defendant] was working duplicitously at [Plaintiff] and for Powers and that 'unbeknownst to [Plaintiff] it was, in essence, paying [Defendant] to work for a competitor.'" Doc. No. 12 at 10 (quoting Doc. No. 1-6 at [9] ¶ 37). However, a review of the Petition reveals no such allegation. Plaintiff merely alleges that Defendant breached this duty "by accepting employment at Powers" which, according to Plaintiff's allegations, he began *after* leaving Plaintiff's employ. Doc. No. 12 at 7 & 9. Thus, Plaintiff has failed to plead its breach of fiduciary duty claim on a basis other than

misappropriation of trade secrets with "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Plaintiff's claim for breach of fiduciary duty arising from the misappropriation of trade secrets or confidential business information is **dismissed** as it is preempted under TUTSA.  To the extent this claim for breach of fiduciary duty allegedly arises from Defendant's employment with Powers, it is **dismissed without prejudice** for failure to plead sufficient facts to state a claim to relief that is plausible on its face.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant Ed Clark's Partial Motion to Dismiss.  The Partial Motion to Dismiss is **denied** as to Plaintiff DeWolff, Boberg & Associates' claim for breach of contract.  The Partial Motion to Dismiss is **granted** as to Plaintiff DeWolff, Boberg & Associates' claim for breach of fiduciary duty and this claim is **dismissed**.

**SO ORDERED.**

Signed August 23rd, 2023.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE